IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ATTA BELLE HELMAN, LARRY DWAYNE HELMAN, and ATTA BELLE HELMAN and LARRY DWAYNE HELMAN, as Special Administrators of the Estate of GARY HELMAN, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. 3:16CV560-PPS/MGG ) |
| BARNETT'S BAIL BONDS, INC., MYRA L. BARNETT, MICHAEL E. BARNETT, THE PAPERS, INC., STACEY STALEY, TADD S. MARTIN, DANIEL S. FOSTER, MICHAEL C. THOMAS, and LEXINGTON NATIONAL INSURANCE CORPORATION, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This case concerns the actions of three bounty hunters that resulted in the death of Gary Helman, the subject of their hunt. Here's what happened according to the amended complaint, which I accept as true for present purposes. Helman was charged in Kosciusko County Superior Court with battery and resisting law enforcement, and his mom, Atta Belle Helman, paid a $2500 bail bond premium to Barnett's Bail Bonds, Inc. to arrange for a $25,000 surety bond to secure Helman's release from custody. A Kosciusko County judge later issued a warrant for Helman's arrest, and Barnett's retained the services of Tadd Martin, Daniel Foster and Michael Thomas to assist in

"recovering" him. They call themselves "bondsmen." The more common term is bounty hunter.

After the warrant for Helman was issued, Martin, Foster and Thomas began searching for Helman. They started working with a woman named Stacy Staley, a local journalist who had written a number of stories about Helman. It is alleged that the bounty hunters were in cahoots with Ms. Staley, using her to set up Helman to assist in his apprehension. According to the amended complaint, it was a symbiotic relationship. The bounty hunters would get their man, and Staley would get the story. On August 24, 2014, Staley went to the home of Helman's mom to interview Helman. He was present and she conducted the "interview" but it was actually a ruse. After the interview she left the home and alerted the awaiting bounty hunters that Helman was inside. The bounty hunters stormed the home, and a gunfight ensued. Both Helman and Martin were shot. Helman died on the scene; Thomas survived. Gary Helman's twin brother, Larry, was also shot, but he too survived.

There was no law enforcement involved in the attempt to capture Helman. The bounty hunters were acting on their own and with the assistance of the journalist. In fact, according to the amended complaint, when the bounty hunters told local law enforcement of their intended plan, "law enforcement attempted to dissuade" them. *See* [DE 69 at 6, ¶ 27.] Law enforcement went so far as to warn the bounty hunters that their plan "would be dangerous" and instructed them to "stand down." *Id.* They ignored the warning, proceeded anyway and the bloody shootout ensued.

Gary Helman's surviving heirs, his mom, Atta Belle Helman, and Gary's twin brother, Larry Helman, are the plaintiffs in this matter. Under the first amended complaint, the Helmans bring this lawsuit against the three bounty hunters, as well as Barnett's Bail Bonds, its owners Michael and Myra Barnett, and the insurance company that acted as the surety for the $25,000 bond on which Gary had been released. There are five causes of action remaining in the first amended complaint: the first four counts — delineated as Count I, II, III and V — are under 42 U.S.C. §1983 alleging constitutional violations. (Count IV, a claim of conspiracy to interfere with civil rights under 18 U.S.C. §1985(3), was voluntarily dismissed on May 19, 2017.) [DE 72.] . There is also one state law claim of breach of contract and violation of Indiana's Deceptive Business Practices Act (Count VI). Two of the three bounty hunters, Daniel Foster and Michael Thomas, have never pleaded in response to the complaint. The journalist, Stacy Staley, and her employer, were named as defendants in the original complaint but the Helmans have since voluntarily dismissed the claims against them. [DE 82, 83.]

The defendants filed motions to dismiss the original complaint raising the issue of whether the Helmans adequately pleaded state action as is required in any §1983 case. [DE 27, 52.] Instead of responding to the motions to dismiss, the Helmans filed an amended complaint. In light of the amended complaint, I denied without prejudice the original motions to dismiss as moot. [DE 70.] The defendants have now renewed their motions to dismiss, this time attacking the amended complaint. But the issue remains the same: are the defendants state actors for purposes of §1983?

*Motion to Dismiss Standard*

To survive dismissal under Fed.R.Civ.P. 12(b)(6), a complaint must contain enough factual matter to state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 603. Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). "A complaint must do more than leave open the possibility that the plaintiff might later plead some set of undisclosed facts that would warrant relief." *Bartley v. Wisc. Dept. of Corrections*, 258 Fed.Appx. 1, 2 (7th Cir. 2007). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007).

*State Action Required for Claims under 42 U.S.C. §1983*

Barnett's Bail Bonds, Myra Barnett and Michael Barnett seek dismissal of all the federal claims on the ground that the Helmans have not alleged any facts demonstrating that the Barnetts were state actors who are subject to suit under §1983. Bounty hunter Tadd Martin's separate motion to dismiss makes the same argument. Section 1983 provides that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state...subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities

4

secured by the constitution and laws, shall be liable to the party injured in an action at law."

In addition to governmental officers and employees, §1983 reaches private individuals who act "under color of" state law, that is, who "exercise government power." *Johnson v. LaRabida Children's Hospital*, 372 F.3d 894, 896 (7th Cir. 2004). "When a plaintiff brings a section 1983 claim against a defendant who is not a government official or employee, the plaintiff must show that the private entity acted under the color of state law." *Rodriquez v. Plymouth Ambulance Service*, 577 F.3d 816, 822 (7th Cir. 2009). The determination whether a private party acted under color of state law "is an important statutory element because it sets the line of demarcation between those matters that are properly federal and those matters that must be left to the remedies of state tort law." *Rodriquez*, 577 F.3d at 823.

In opposition to the state actor argument, the Helmans rely on cases addressing the scope of a bondsman's authority under the common law, arguing that "[t]he bail bondsmen at issue abused their legal authority by entering the home of a third party, and by abusing their legal authority have subjected themselves to liability." [DE 86 at 3.] All the movants reply that the house, even if owned by Atta, *was in fact* Gary's home, as reflected in the arrest warrant issued by the Kosciusko Superior Court. [DE 89-1 at 1.] More importantly, however, the Helmans' argument overlooks entirely the state actor predicate to liability under §1983. The federal case on which the Helmans rely for this argument, *McCaleb v. Peerless Ins. Co.*, 250 F.Supp. 512 (D.Neb. 1965), does

5

not address whether the bounty hunter defendant is a state actor, but instead focuses (as the Helmans do) on the wrongfulness of his conduct. I must first address the threshold issue of state action.

This is a murky area of the law and several tests have been identified by the Supreme Court to determine whether a private individual or entity has acted under color of law, including the "state command and encouragement" test, the "joint participation" doctrine, and the "public function" test. *Listecki v. Official Committee of Unsecured Creditors*, 780 F.3d 731, 738 (7th Cir. 2015); *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 823-24 (7th Cir. 2009). The Seventh Circuit has listed "numerous situations when private conduct takes on the color of law," but ultimately concludes that every state actor analysis is fact-specific and case-specific: "[o]ver time, Supreme Court and Seventh Circuit precedent have revealed that these cases do not so much enunciate a test or series of factors, but rather demonstrate examples of outcomes in a fact-based assessment." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 816 (7th Cir. 2009). "At its most basic level, the state action doctrine requires that a court find such a 'close nexus between the State and the challenged action' that the challenged action 'may be fairly treated as that of the State itself.'" *Rodriguez*, 577 F.3d at 823, quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974).

To understand the specific context of this case, some background on the practice of bail bonding is helpful. The commercial bail bond system and the bounty hunters it employs appears to be a uniquely American institution. Indeed, paying for someone

else's bail is actually criminalized in most western nations. *See* Adam Liptak, *Illegal Globally, Bail for Profit Remains in U.S.*, *New York Times*, January 8, 2008. The industry got its legitimacy 150 years ago when the Supreme Court said the following:

> When the bail is given, the principal is regarded as delivered to the custody of his sureties. Their domain is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up to his discharge; and if it cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another state; may arrest him on the Sabbath; and if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of due process. None is needed. It is likened to the arrest by the sheriff of an escaped prisoner.

*Taylor v. Tainter*, 83 U.S. 366, 370-71 (1872).

The Supreme Court's language seems antiquated, and frankly, a little bit odd in the present day where over 1.1 million law enforcement officers are currently employed in this country, https://www.bjs.gov/content/pub/pdf/nsleed.pdf, and where fugitive task forces proliferate. Nevertheless, the private system of bail enforcement remains well ingrained in the American criminal justice system. So for better or worse, partly on the strength of the Supreme Court's opinion in *Taylor*, the breadth of a bail bondsman's power over his principal continues to be recognized in American law.

In 1931, the Fifth Circuit elaborated on the non-governmental authority of the bail bondsman to capture the object of his bond: "The right of the surety to recapture his principal is not a matter of criminal procedure, but arises from the private undertaking implied in the furnishing of the bond....It is not a right of the state but of the surety." *Fitzpatrick v. Williams*, 46 F.2d 40, 40 (5th Cir. 1931). In a context of a bail

7

bond furnished in Washington state for a fugitive arrested in New Orleans, the court further observed: "As this right is a private one and not accomplished through governmental procedure, there would seem to be no obstacle to its exercise wherever the surety finds the principal. Needing no process, judicial or administrative, to seize his principal, jurisdiction does not enter into the question." *Id*. at 41.

The Barnetts acknowledge that the Seventh Circuit has not ruled on whether bail bondsmen are state actors when they make attempts to apprehend a bail jumper. [DE 74 at 6.] The majority of courts have concluded that they are not. "Numerous courts in analogous circumstances have held that bail bondsmen are not state actors." *Weaver v. James Bonding Co., Inc.*, 441 F.Supp.2d 1219, 1226 (S.D.Ala. 2006) (collecting cases). "These courts have generally held that a bondsman only becomes a state actor when he acts in concert with police officers or in some other way attains state authority." *McCoy v. Johnson*, 176 F.R.D. 676, 681 (N.D.Ga. 1997). *See also Weaver*, 442 F.Supp.2d at 1226, quoting *Landry v. A-Able Bonding, Inc.*, 75 F.3d 200, 204 (5th Cir. 1996) ("The most critical factor underlying these decisions has typically been 'whether the bondsmen enlisted the assistance of law enforcement officers in arresting their principals.'")

The defendants are all private parties, and only in "rare circumstances" are private parties considered to be state actors for purposes of §1983. *Russell v. Redstone Federal Credit Union*, __ Fed.Appx. __, 2017 WL 4390375 at *2 (11th Cir. 2017); *Jarvis v. Village Gun Shop, Inc.*, 805 F.3d 1, 8 (1st Cir. 2015). "The bar for such a showing is set quite high." *Jarvis*, 805 F.3d at 8.

In order to succeed in federal court on such claims, the Helmans must plead and prove that on the particular facts of this case, the challenged conduct of the Barnetts and the bounty hunters can be fairly attributed to the state. The Supreme Court has taught that a court's approach to this question "begins by identifying 'the specific conduct of which the plaintiff complains.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999), quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). But this is where the problem arises; the Helmans have explicitly pleaded the *non-involvement* of official law enforcement. And they made these important concessions in their first amended complaint after the lack-of-state-action issue was raised in the initial motion to dismiss briefing. On the one hand, the first amended complaint alleges in some detail the cooperation between the Barnetts, the three individual bounty hunters, and the journalist in planning the capture of Gary Helman. [DE 69 at ¶¶21-31.] But as it relates to the involvement of law enforcement, it is a different story. Here's what the Helmans tell me in their amended complaint:

> Prior to the attack occurring, Ms. Staley, Mr. Martin, Mr. Foster, and Mr. Thomas alerted local law enforcement to their intent to locate and apprehend Gary Helman, without providing full details for their plan. Law enforcement attempted to dissuade the Defendants from engaging Gary Helman, warning that such a confrontation would be dangerous and that the Defendants should stand down to avoid the possibility of violence.

[*Id*. at ¶27.]

In other words, the bounty hunters in this case are alleged to have proceeded *despite the warning* of law enforcement, not *with the assistance of* law enforcement, who

9

were called to the scene only in the bloody aftermath because Gary and Larry Helman, as well as Martin, had all been shot. [*Id*. at ¶¶35-36.] On the facts the Helmans have alleged, it is plain that there was no nexus between the challenged conduct of the bounty hunters and the official authority of the State of Indiana or Kosciusko County such that the challenged conduct could be fairly attributed to the State.

Despite the Seventh Circuit's teaching on fact-specific determination of state action, the Barnetts and Martin have analyzed the Helmans' pleading under various tests, and persuasively argue that it does not offer facts that could establish action attributable to the state on any of those theories. The long history of private bail bondsmen shows that the function is not one within the exclusive prerogative of the state, which fact militates against considering it the state's delegation of a public function. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352-53 (1974); *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996). A private entity does not become a state actor merely by performing a function that serves the public. *Miller v. Vohne Liche Kennels, Inc.*, 600 Fed.Appx. 475, 477 (7th Cir. 2015), citing *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996). "And while delegation of a state's *entire police power* to a private entity may turn that entity into a state actor, that is not what happened here." *Miller*, 600 Fed.Appx. at 477 (corporate defendant's training of police canine was not state action subject to §1983 claim).

A joint participation test does not support a finding of state action by the private defendants either. The facts alleged by the Helmans are directly to the contrary: official

10

law enforcement, once notified of the bounty hunters' plan to apprehend Gary, not only did not participate, but *specifically warned against it*. [DE 69 at ¶27.] The same factual allegations would defeat application of the so-called "command and encouragement" test, requiring either the state's exercise of coercive power or such significant encouragement that the choice must be deemed to be that of the state. *Blum*, 457 U.S at 1004.

The Helmans acknowledge that they have alleged that "law enforcement discouraged the bondsmen from doing what they did," but nonetheless contend that the defendants might be found to be state actors because discovery "may well establish a pattern or practice of law enforcement deferring to these bondsmen on issues involving capture." [DE 86 at 11.] For starters, no such pattern or practice is alleged in the first amended complaint. But let's suppose a pattern or practice did exist for local law enforcement in Kosciusko County to defer to bondsman, in the mine run of cases, on issues of capture. It's apparent from the amended complaint that law enforcement specifically chose to deviate from the pattern and practice — if it exists — in this case. They specifically tried to "dissuade" the bounty hunters. They told them to "stand down" because of the "possibility of violence." Amended Complaint at 6, ¶ 27.

What's more, let's assume again that evidence could be found in discovery of a pattern or practice of law enforcement deferring to bail bondsman in this type of situation. The legal argument would still be insufficient and unsuccessful. This is because the Supreme Court has said that "[m]ere approval of or acquiescence in the

11

initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Blum*, 457 U.S. at 1004–05. The Supreme Court has repeated this principle, applying it specifically to the question of state action by a private party for purposes of potential liability under §1983. *American Mfrs.*, 526 U.S. at 52. Yet, mere acquiescence is just what the Helmans would be arguing if they found evidence of a pattern or practice of law enforcement deferring to bail bondsmen. And that would be insufficient as a matter of law.

For all these reasons, I am persuaded that the first amended complaint does not contain facts that could establish a nexus between the challenged conduct of the defendants and actions of the state.[1] To the contrary, by admitting that law enforcement specifically told the bounty hunters to "stand down" or otherwise risk violence, the Helmans have pleaded themselves out of court. All the claims under §1983 are therefore subject to dismissal for failure to state a claim.

In this circuit, a failure to state a claim is generally treated with a second opportunity for the plaintiffs to plead their case. *Runnion ex rel. Runnion v. Girls Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015). But as I noted above, here the first amended complaint was filed after the state actor argument was raised by Martin and the Barnetts in earlier-filed motions to dismiss directed to the original complaint. [DE 27, 52.] In addition, though represented by counsel, the

---

[1] There is no basis to distinguish defendants Foster and Thomas from defendant Martin in analyzing the sufficiency of the pleading as to state action, and my conclusion will be applied to defendants Foster and Thomas as well as Martin.

Helmans' response on this issue has not identified any allegations the Helmans might make in a second amended complaint that could plausibly support claims requiring action under color of state law by the Barnetts, Martin, Foster and Thomas. The motions seeking dismissal of the §1983 claims (Counts I, II, III and V) will therefore be granted with prejudice. The Helmans' claims as to the legality of the bail agent's and bounty hunters' conduct "must be left to the remedies of state tort law." *Rodriquez*, 577 F.3d at 823.

*Supplemental Jurisdiction*

Count VI of the Helmans' first amended complaint alleges that defendants Lexington National and Barnett's Bail Bonds breached the bail contract with Atta Helman and violated Indiana's Deceptive Business Practices Act. In its motion to dismiss, Barnett's has argued that this court should decline to exercise supplemental jurisdiction over Count VI. A separate motion to dismiss has been filed by defendant Lexington National Insurance Corporation, challenging Count VI on the merits. [DE 75.]

Because the civil rights claims under §1983 arise under federal law, the court has what is called "original jurisdiction" over them. The Helmans posit the court's jurisdiction over the state law claims in Count VI on what is called "supplemental jurisdiction." [DE 69 at §4.] Under 28 U.S.C. §1367(a), a federal court has supplemental jurisdiction over claims that are so related to claims within the court's original jurisdiction that they "form part of the same case or controversy." But §1367(c)(3)

13

provides that a federal court can decline to exercise supplemental jurisdiction under §1367(a) if it "has dismissed all claims over which it has original jurisdiction." In fact, "[t]he usual practice in this circuit is for district courts to 'dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.'" *Hagan v. Quinn*, 867 F,3d 816, 830 (7th Cir. 2017), quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).

Consistent with that practice, I will dismiss Count VI without prejudice, declining to exercise supplemental jurisdiction over it after the dismissal of all the federal claims. I need not and will not address Lexington's arguments on the merits of Count VI, and Lexington's motion to dismiss will be denied without prejudice as moot.

**Conclusion**

What happened to Mr. Helman is, to say the least, regrettable. One could reasonably question the wisdom of a system that allows private bounty hunters to capture fugitives as opposed to highly trained law enforcement officers. But for better or worse, this uniquely American enterprise is lawful. And under the facts as alleged in this case, it was an entirely private affair having no involvement or encouragement by the state.

**ACCORDINGLY:**

The motion to dismiss of defendants Barnett's Bail Bonds, Inc., Myra L. Barnett and Michael E. Barnett [DE 73] is GRANTED.

The motion to dismiss of defendant Tadd S. Martin [DE 80] is GRANTED.

The motion to dismiss of defendant Lexington National Insurance [DE 75] is DENIED WITHOUT PREJUDICE AS MOOT.

The Clerk shall enter judgment dismissing Counts I, II, III, and V with prejudice for failure to state a claim, dismissing Count IV with prejudice on the basis of the plaintiffs' stipulation [DE 82, 83], and dismissing Count VI without prejudice pursuant to 28 U.S.C. §1367(c)(3) because the court declines to exercise supplemental jurisdiction after the dismissal of all federal claims. Upon entry of the judgment, this case will be CLOSED.

ORDERED this 20th day of November, 2017.

    /s/ Philip P. Simon
United States Judge
Northern District of Indiana